**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THOMAS CORSENTINO,<br><br>           Plaintiff,<br><br>      v.<br><br>MEYER'S RV CENTERS LLC D/B/A<br>CAMPING WORLD RV SALES, et al.,<br><br>           Defendants. | Civil Action No. 20-03287 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge**:

Plaintiff Thomas Corsentino ("Plaintiff") has filed an eight-count Complaint against Thor Motor Coach, Inc. ("Thor Motor"), Meyer's RV Centers, LLC d/b/a Camping World RV Sales ("Camping World"), and Bank of the West (collectively, "Defendants"), seeking to recover damages relating to the sale and use of an allegedly defective 2018 Challenger Recreational Vehicle ("RV"). Plaintiff alleges that the RV became defective soon after he purchased it from Camping World in May 2018. The RV was manufactured by Thor Motor, and the vehicle had a limited factory warranty. Presently before the Court is Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a). In this motion, Defendants, collectively, invoke a forum-selection clause contained in the limited warranty provided by Thor Motor, which requires venue in Indiana. Def. Mot., at 5. Plaintiff opposes the transfer motion, relying on a competing forum-selection clause in his purchase contract with Camping World, which designates venue in New Jersey. For the reasons that follow, Defendants' motion to transfer is **DENIED**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On May 31, 2018, Plaintiff purchased an RV from Meyer's RV Centers, an authorized dealer for Camping World, in New Jersey.  *See* Def. Mot., Ex. A.  The RV cost $141,820.  *Id.* Plaintiff paid $5,750 out of pocket and received $22,400 in credits in exchange for trading in a car. *See* Compl., ¶ 2.  Bank of the West financed the remaining balance.  *Id.* ¶ 17.  Plaintiff alleges that the RV began to break down as soon as he purchased it, "impairing its use, value, and safety."  *Id.* ¶¶ 12-13.  According to Plaintiff, the problems were so serious that Camping World or Thor Motor must have concealed them.  *Id.* ¶ 14; Def. Mot., Ex. B-C.  Plaintiff asked Thor Motor to repair the RV pursuant to the limited warranty.  *See* Compl., ¶¶ 13, 19; Def. Mot., Ex. A; Ex. C.  When the fixes failed, he demanded a refund from Camping World.  *See* Def. Mot., Ex. E.  When that failed, too, Plaintiff "rejected" the RV pursuant to N.J.S.A. 12A:2-602 and 12A:2-608.[1]  *See* Compl., ¶ 52.  Camping World has possessed the RV in New Jersey since September 2018.  *Id.* ¶ 23, 50; Opp. Br., at 1.

On February 6, 2020, Plaintiff filed his Complaint in the New Jersey Superior Court, Ocean County, Law Division.  Count One alleges state statutory violations against Camping World for inflating the price of the RV, deceptively presenting it as "non-negotiable" due to manufacturer fees, and retaining the extra profits.  *See* Compl. ¶¶ 25-43; N.J.S.A. 56:8-1; N.J.S.A. 56:12-15. Counts Two and Three allege breach of contract against Camping World for "unconscionable price gouging," *id.* ¶¶ 4, 18, 31, failure to disclose material defects, *id.* ¶¶ 14, 29, and misrepresentation. *Id.* ¶¶ 20, 29.  With respect to these Counts, Plaintiff claims he was overcharged $12,366 for various unnecessary services and add-ons.  *Id.* ¶¶ 4-5, 7, 33.  Counts Four, Five, and Six allege

---

[1]      N.J.S.A. 12A:2-602 (in conjunction with N.J.S.A. 12A:2-601) sets forth the "manner" by which a buyer may "rightful[ly] reject[]" goods that "fail in any respect to conform to the contract."  N.J.S.A. 12A:2-602 permits a buyer, in certain circumstances, to "revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him."

breach of warranty against Camping World and Thor Motor under the Uniform Commercial Code, *id.* ¶¶ 49-54, and 15 U.S.C. § 2301, the Magnuson-Moss Warranty Act. *Id.* ¶¶ 55-56. Count Seven alleges fraud against Camping World. *Id.* ¶¶ 58. Finally, Count Eight alleges that Bank of the West is "subject to all claims" against Camping World "pursuant to the [Federal Trade Commission's] Holder Rule," *id.* ¶¶ 60-62, which imposes liability on creditors for claims against sellers. *See* 16 C.F.R. 433.2(a). Plaintiff seeks revocation plus treble damages, court costs, and attorney's fees. *Id.* ¶¶ 43, 45, 47. On March 24, 2020, Defendants removed this matter to this Court, and on April 13, 2020, they filed the present motion to transfer venue.

## II.    STANDARD OF REVIEW

A district court may transfer a civil action to any other district where the case might have been brought if the transfer serves "the convenience of parties and witnesses" and is "in the interest of justice." 28 U.S.C. § 1404(a). The transfer decision is usually within "the sound discretion of the trial court." *Teva Pharmaceuticals USA, Inc. v. Sandoz Inc.*, No. 17-275, 2017 WL 2269979, at *4 (D.N.J. May 23, 2017); *Days Inns Worldwide, Inc. v. RAM Lodging, LLC*, No. 09–2275, 2010 WL 1540926, at *2 (D.N.J. April 14, 2010); *Cadapult Graphic Sys. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000). Moreover, where "venue is proper for one defendant but not others, a district court may sever and transfer the claims as to any defendant . . . and retain the remainder of the claims." *High 5 Games, LLC v. Marks*, No. 13-7161, 2019 WL 3761114, at *12 (D.N.J. Aug. 9, 2019); *see also D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110-11 (3d Cir. 2009). "When the parties have agreed to a valid forum-selection clause," however, the Supreme Court has held that "a district court should ordinarily transfer the case to the forum specified in that clause." *Atlantic Marine Coast. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*, 571 U.S. 49, 62 (2013). In such a case, a court must (1) give no weight to the forum preferred by

"the party defying the forum-selection clause"; (2) deem the private interests to "weigh entirely in favor of the preselected forum"; and (3) analyze the public interests only. *Id.* at 63-64.

Where, there are competing forum-selection clauses, as here, the Third Circuit has laid out a four-step framework to supplement *Atlantic Marine*. *See In re Howmedica Osteonics Corp.*, 867 F.3d 390, 403 (3d Cir. 2017). The Court must weigh "(1) the forum-selection clauses, (2) the private and public interests relevant to non-contracting parties, (3) threshold issues related to severance, and (4) which transfer decision most promotes efficiency while minimizing prejudice to non-contracting parties' private interests." *Id.* at 403-04. This analysis can be "different and rather complex." *Ford v. EF Explore America, Inc.*, No. 18-2800, 2018 WL 6050671, at *1, *4 (D.N.J. Nov. 19, 2018).

## III.   DISCUSSION

Defendants contend that Plaintiff must bring his claims against Thor Motor in Indiana because the limited warranty provided by Thor Motor contains a forum-selection clause governing "[a]ny and all claims, controversies and causes of action arising out of or relating to [the] warranty."[2] *See* Def. Mot., at 7. Defendants add that, although Camping World and Bank of the West are not subject to the limited warranty, the Court should transfer Plaintiff's claims against them "for the convenience of the parties, in the interests of justice." *See* 28 U.S.C. § 1404(a). In response, Plaintiff argues that a "competing and conflicting forum-selection clause" in his purchase contract with Camping World "designates New Jersey as the appropriate venue" for all

---

[2]     The forum-selection clause between Plaintiff and Thor Motor states: "Exclusive jurisdiction for deciding legal disputes relating to alleged breach of warranty or representations of any nature must be filed in the courts within the state of manufacture, which is Indiana. Also, the limited warranty shall be interpreted and construed in accordance with the laws of the state of Indiana. Any and all claims, controversies and causes of action arising out of or relating to this limited warranty, whether sounding contract, tort or statute, shall be governed by the laws of the state of Indiana." *See* Def. Mot., at 5.

claims.[3]  *See* Opp. Br., at 2.  The parties agree that *Howmedica* governs their dispute.  *See* Opp.

Br., at 2.  The Court therefore applies the *Howmedica* framework to determine whether to transfer

all or some of Plaintiff's claims to Indiana, or retain the whole case in New Jersey.

    A.    *Step One: The Forum-Selection Clauses*

At Step One, the Court must presume that claims involving parties who agreed to a forum-

selection clause should be litigated in the forum designated by the clause.  *See Atlantic Marine*,

587 U.S. at 66; *Samuels v. Medytox Solutions, Inc.*, No. 13-7212, 2014 WL 4441943, at *6 (D.N.J.

Sept. 8, 2014).  However, because the Third Circuit has construed *Atlantic Marine* to govern only

contracting parties, the Court may not enforce a forum-selection clause against a party who did

not bargain for it.  *Howmedica*, 867 F.3d at 404, 406-07; *see also In re Rolls Royce Corp.*, 775

F.3d 671, 681 (5th Cir. 2014).

There are two mandatory forum-selection clauses in the present case that bind all parties.[4]

Defendants intimate that only one should control this motion, *i.e.*, the Indiana clause, since

---

[3]      The forum-selection clause between Plaintiff and Camping World states: "Any controversy, dispute or claim arising out of or relating to this Agreement or breach thereof shall be Interpreted under the laws of the state in which Dealer is located and venue will be in the state and county in which Dealer is located or the applicable federal court."  *See* Opp. Br., at 1-2; Def. Mot., Ex. B.

[4]      Bank of the West is subject to the same forum-selection clause between Plaintiff and Camping World, because Bank of the West accepted assignment of their contract.  *See UMLIC VP LLC v. Matthias*, 364 F.3d 125, 133 (3d Cir. 2004) ("Doctrinally, an assignee stood in the shoes of the assignor at common law, and the Uniform Commercial Code provides that '[t]ransfer of an instrument . . . vests in the transferee any right of the transferor to enforce the instrument.'") (citation omitted).  Even if the doctrine of assignment does not apply, there are grounds to bind Bank of the West to the forum-selection clause as a third-party beneficiary of the contract, *see In re McGraw-Hill Global Educ. Holdings LLC*, 908 F.3d 48, 59 (3d Cir. 2018), or under the closely-related parties doctrine.  *See, e.g.*, *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015); *Steinmetz v. Scholastic Inc.*, No. 2:16-3583, 2017 WL 4082681, at *2 (D.N.J. Sept. 15, 2017) ("[I]t is widely accepted that non-signatory third-parties who are closely related to [a] contractual relationship are bound by forum selection clauses.") (citing *First Fin. Mgmt. Grp. Inc. v. Univ. Painters of Balt., Inc.*, No. 11-5821, 2012 WL 1150131 at *3 (E.D. Pa. Apr. 5, 2012)); *Synthes, Inc. v. Emerge Medical, Inc.*, 887 F. Supp. 2d 598, 607, 613 (E.D. Pa. 2012) ("All that is required is facts demonstrating a close relationship to the signatory or to the contractual dispute.") (citation omitted).  Indeed, Bank of the West does not dispute that the forum-selection clause applies to it.

Camping World and Bank of the West consent to transfer to Indiana.  There is no doubt that venue is waivable, "even when premised on a forum-selection clause." *Howmedica*, 867 F.3d at 407; *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 743 (7th Cir. 2007); 28 U.S.C. § 1406(b).  And, where there is a competing forum-selection clause but no party seeks to enforce it, that clause will not control the transfer analysis. *Howmedica*, 867 F.3d at 407; *Mehta v. Angell Energy*, No. 18-2319, 2019 WL 4750142, at *6 (D.N.J. Sept. 30, 2019); *Jon Feingersh Photography, Inc. v. Pearson Educ., Inc.*, 978 F. Supp. 2d 463, 467 & n.5 (E.D. Pa. 2013).  Here, however, the Court cannot disregard New Jersey as a possible venue for some of Plaintiff's claims, even if Camping World and Bank of the West have sought to waive any objection to an Indiana forum, because Plaintiff seeks to enforce the New Jersey forum selection clause. *See Feingersh Photography*, 978 F. Supp. 2d at 467 ("Despite [its] eagerness to swap [Indiana for New Jersey], [defendant] does not have unilateral authority to substitute one venue for another in a negotiated contract.").  Like Thor Motor, then, Camping World and Bank of the West are subject to the "presumption that the claims against [them] should be litigated in [the] contractually agreed-upon forum." *Howmedica*, 867 F.3d at 407.  In turn, Step One "cut[s] in favor" of severing and transferring Plaintiff's claims against Thor Motor to Indiana and retaining Plaintiff's claims against Camping World and Bank of the West in New Jersey.

B.     *Step Two: Private Interests Relevant to Non-Contracting Parties, and Public Interests*

At Step Two, the Court must weigh the private interests relevant to the parties who have not signed any forum-selection clause, in addition to any applicable public interests. *Howmedica*, 867 F.3d at 407; *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).  If, on balance, this step points to the same forum as Step One, then the Court ends the analysis, severs the parties' claims, and enforces both forum-selection clauses. *See Howmedica*, 867 F.3d at 404 ("[I]f the

Step One and Step Two analyses point different ways, then the court considers [Step Three]."); *Piazza Family Trust II. v. Ciarrocchi*, No. 17-1704, 2017 WL 5146007, at *7 (E.D. Pa. Nov. 6, 2017) ("Because steps one and two point to different forums, we move to step three."); *Ford*, 2019 WL 3492211, at *6 ("Because steps 1 and 2 favor transfer, I need not carry the analysis any farther.").

                        i.       <u>Private Interest Factors</u>

Ordinarily, the Court would begin by determining the private interests of the parties who have not bargained for a forum-selection clause, as in *Howmedica*. But no such parties exist here. They have all agreed to one forum-selection clause or the other. The Court therefore need not conduct an independent private interests inquiry. *See Atlantic Marine*, 571 U.S. at 64 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient . . . for their pursuit of the litigation."). Indeed, as a matter of law, the Court must find that the private interests of each party are encompassed entirely by forum-selection clause to which that party has agreed, and point exclusively in the direction of the preselected forum. *See Piazza Family*, 2017 WL 5146007, at *3 ("The private interest factors are guided by an agreement between the parties as to where they should resolve defined disputes.").

Because no party in *Howmedica* sought to enforce one of the two applicable forum-selection clauses, the Third Circuit evaluated the parties' private interests in the usual course, as well as the private interests of parties who did not agree to any forum-selection clause. 867 F.3d at 408. On the other hand, when all parties are bound by a forum-selection clause, as here, the court assumes that they prefer the preselected forums exclusively, and ends its private interests analysis. *See Atlantic Marine*, 571 U.S. at 63 (explaining that, in bargaining for a forum-selection clause, a party fully exercises "its venue privilege," and "[o]nly that initial choice deserves

deference"). Accordingly, the presence of two independently valid forum-selection clauses, both of which a party is seeking to enforce, eliminates the private interest inquiry at Step Two.

      ii.    <u>Public Interest Factors</u>

The Court next analyzes the public interest factors to determine whether they offset the "strong presumption in favor of enforcing the forum-selection clauses." *Howmedica*, 867 F.3d at 403 (quoting *Atlantic Marine*, 571 U.S. at 63). While there is no exhaustive list of public interest factors, and the analysis is flexible and individualized based on the unique facts of each case, *see Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 450 (D.N.J.1999), typical factors include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 879-80.

The Court first considers "the locus of the alleged culpable conduct," *i.e.*, where the claims arose. *Lacey v. Cessna Aircraft Co*., 862 F.2d 38, 48 (3d Cir. 1988); *Tischio v. Bontex Inc.*, 16 F. Supp. 2d 511, 526 (D.N.J. 1998). In contract disputes such as this one, the Court determines where the claims arose based on "where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." *Depuy Synthes Sales, Inc. v. Gill*, No. 13–04474, 2013 WL 5816328, at *8 (D.N.J. Oct. 29, 2013); *Business Store, Inc. v. Mail Boxes Etc.*, No. 11–3662, 2012 WL 525966, at *7-8 (D.N.J. Feb. 16, 2012); *Chigurupati v. Daiichi Sankyo Co.,* No. CIV. 10–5495, 2011 WL 3443955, at *6 (D.N.J. Aug. 8, 2011), *aff'd*, 480 Fed. App'x. 672 (3d Cir. 2012); *Advanced Technologies and Installation Corp. v. Nokia Siemens Networks US, L.L.C.*, No. 09–6233, 2010 WL 3522794, *8 (D.N.J. Sept. 2, 2010); *Allianz Life Ins.*

*Co. of North America v. Estate of Bleich*, No. 08–668, 2008 WL 4852683, at *5 (D.N.J. Nov. 7, 2008); *Samuels*, 2014 WL 4441943, at *9.

Here, New Jersey is "the center of gravity of the dispute, its events and transactions." *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000). Camping World negotiated, signed, executed, delivered, performed, and allegedly breached its contract with Plaintiff in New Jersey—and currently possesses the RV in this state. Bank of the West provided credit to a New Jersey citizen for a New Jersey purchase from a New Jersey corporation, has a lien on the RV in New Jersey, and is the assignee on Camping World's New Jersey contract. Similarly, even if Thor Motor manufactured the RV elsewhere, it authorized Camping World to sell the RV in New Jersey; signed, executed, and registered a warranty in New Jersey, which was delivered according to New Jersey law, regardless of where it was drafted; contemplated performance in New Jersey, and approved service or repairs here; allegedly breached the warranty in New Jersey; and made decisions that caused "harm to be felt" primarily in New Jersey.[5] *Business Store*, 2012 WL 525966, at *8. Defendants do not challenge these facts, nor do they identify any transactions or events occurring elsewhere that might be relevant. Thus, this factor strongly supports venue in New Jersey. *See Allianz Life*, 2008 WL 4852683, at *5 ("These facts are more than sufficient to establish that Plaintiff's claim arose in New Jersey.").

---

[5]     Plaintiff does not appear to allege that Thor Motor failed to make payments under the warranty. If that were the case, then this analysis would proceed differently, as the decision not to make payments would have "occurred at [Thor Motor's] offices," presumably in Indiana. *McNulty v. J.H. Miles and Co., Inc.*, 913 F. Supp. 2d 112, 119 (D.N.J. 2012). Indeed, "[w]here a party has [ ] failed to make a payment, the locus of the action is where the party failed [to] take that action rather than where the result is felt." *Stalwart Capital, LLC v. Warren Street Partners, LLC*, No. 11–5249, 2012 WL 1533637, *4 (D.N.J. Apr. 30, 2012); *Days Inn Worldwide*, 2010 WL 1540926, at *4; *see also Cottman*, 36 F.3d at 295 ("The omissions that [plaintiff] cites . . . [defendant's] . . . failure to remit payments—actually occurred in Michigan . . . . [e]ven though the result was [plaintiff's] non-receipt of those items in Pennsylvania.").

Because this case involves conduct occurring entirely in New Jersey and "allegations that one of its citizens was the victim of a breach of contract," *Travelodge Hotels, Inc.*, No. 2:06-03543, 2007 WL 2156367, at * 8 (D.N.J. July 25, 2007), New Jersey has a strong interest in its outcome. Indeed, Defendants recognize this fact in their motion, conceding that the state has an "interest in protecting consumers within [New Jersey] and administering [state] laws." Def. Mot., at 8-9. New Jersey also has a "compelling interest in seeing that a New Jersey court interprets a contract formed in New Jersey," *Coral Chemical Co. v. Chemetall US, Inc.*, No. 4:16-00023, 2016 WL 3521952, at *2 (S.D. Ind. June 28, 2016), an equally strong "interest in protecting its citizens from financial harm," *McNulty v. J.H. Miles and Co., Inc.*, 913 F. Supp. 2d 112, 123 (D.N.J. 2012), or other "unlawful conduct," *Travelodge Hotels*, 2007 WL 2156367, at *8, and an "interest in regulating any alleged wrongdoing by [New Jersey] corporations," such as Camping World, against whom Plaintiff has brought six of his eight Counts. *Mcnulty*, 913 F.2d at 123. Indiana's interests are comparatively weak. Although Indiana shares New Jersey's interest in regulating the misdeeds of its corporate citizen, Thor Motor, *id.*, it has an opposing interest in ensuring that "the burden of jury duty" will not fall on its community, which bears no relationship to this dispute beyond the happenstance of Thor Motor's residence. *Honeywell*, 817 F. Supp. at 486 (quoting *Ferens v. John Deere Co.*, 494 U.S. 516, 529-30 (1990)). Because the genesis of this dispute is a defective RV, which was sold in New Jersey, and related breaches of contracts, which were negotiated, executed, and performed in New Jersey, local interests strongly favor retaining the case here.

Another "important public interest factor is the desire to have cases tried before judges familiar with the applicable law." *Tischio*, 16 F. Supp. 2d at 526; *see also Hudson United Bank v. Chase Manhattan Bank of Connecticut, NA*, 832 F. Supp. 881, 888 (D.N.J. 1993); *Sandvik, Inc. v. Continental Ins. Co.*, 724 F. Supp. 303, 307 (D.N.J. 1989). As for Plaintiff's claim under

Magnussen-Moss Warranty Act, federal courts in both Indiana and New Jersey are presumed to be equally "familiar with the applicable" federal law, and no departure from that presumption is warranted here. *See Liggett Grp., Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 537 (D.N.J. 2000) (antitrust); *Ricoh Co., Ltd v. Honeywell, Inc.*, 817 F. Supp. 473, 486 (D.N.J. 1993) (patent); *Teva*, 2017 WL 2269979, at *8 (patent). All but one of Plaintiff's remaining claims assert violations of New Jersey state statutes or contract law, which is governed by state common law. *See General Engineering Corp. v. Martin Marietta*, 783 F.2d 352, 356 (3d Cir. 1986) (applying state common law to contract construction and interpretation); *In Re Diaz Contracting, Inc.*, 817 F.2d 1047, 1050-52 (3d Cir. 1987) (applying state common law to contract enforceability); *Pepe v. Rival Co.*, 85 F. Supp. 2d 349, 380 (D.N.J. 1999) (holding that, under New Jersey choice of law rules, the governing law in contract cases is "that of the jurisdiction with the most significant relationship and closest contacts with the transaction and the parties"). While New Jersey courts are well-versed in New Jersey law, "federal judges routinely apply the law of a State other than the State in which they sit," *Atlantic Marine*, 571 U.S. at 67, such that the Court can be "confident that [Indiana judges] can 'become familiar[] . . . with the applicable state law." *Jumara*, 55 F.3d at 879-80; *Yocham v. Novartis Pharms. Corp.*, 565 F. Supp. 2d 554, 560 (D.N.J. 2008) ("[F]ederal district courts are regularly called upon to interpret the laws of [other] jurisdictions."). Thus, the fact that New Jersey law predominates in Plaintiff's Complaint does not strongly support venue in New Jersey, *see Howmedica Osteonics Corp. v. Howard*, No. 19-19254, 2020 WL 1102494, at *6 (D.N.J. Jan. 17, 2020), *aff'd*, 2020 WL 1082601, and will only tip the balance in a close case. *See Yocham*, 565 F. Supp. 2d at 560.

The Court must also compare court congestion in New Jersey and Indiana. In general, "relative congestion . . . is not a [public interest] factor of great importance" in a transfer analysis.

*Kisko v. Penn. Cent. Transp., Co.*, 408 F. Supp. 984, 987 (M.D. Pa. 1976); *Andrews v. Norfolk Southern Corp.*, No. 07-2688, 2008 WL 687255, at *4 (D.N.J. Mar. 4, 2008) ("[T]his Court does not grant the relative caseload of different districts great importance.").  To the extent that it is important, conflicting data will not move the needle for either party, nor will statistical evidence indicating one venue is more congested than another if "the reality is that [both venues] are [] busy districts." *Eastman v. First Data Corp.*, No. 10-5860, 2011 WL 1327707, at *5 (D.N.J. April 5, 2011).  Although Plaintiff "presumes" that congestion is the same in both forums for the purposes of this motion, the District of New Jersey is, in fact, significantly busier than the District of Indiana, which slightly supports transfer.[6] *See Solomon v. Continental Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973); *Nat'l Property Investors VIII v. Shell Oil Co.*, 917 F. Supp. 324, 329-330 (D.N.J. 1995); *Andrews*, 2008 WL 687255, at *4.

Finally, Plaintiff contends that there is a public policy to promote judicial economy, which would not be well-served by severing and transferring the claims against Thor Motor.  A key factor in the transfer analysis is conserving judicial resources.  *Feingersh Photography*, 978 F. Supp. 2d at 467 (collecting cases).  For this reason, district courts frequently decline to enforce conflicting forum-selection clauses governing separate claims in a single action.  *See, e.g.*, *Sarkisian*, 2016 WL 8677214, at *3-4; *Samuels*, 2014 WL 4441943, at *11; *Feingersh Photography*, 978 F. Supp. 2d at 468; *Blissfield Mfg. Co. v. Blue H2O Solutions, LLC*, No. 12-15610, 2013 WL 5450289, at *5 (E.D. Mich. Sept. 30, 2013); *Jones v. Custom Truck & Equip., LLC*, No. 10-611, 2011 WL 250997, at *4 (E.D. Va. Jan. 25, 2011); *Freedom Mortgage Corp. v. Irwin Fin. Corp.*, No. 08-146, 2009 WL 763899, at *4 (D. Del. Mar. 23, 2009); *Am. Greetings Corp. v. Cookie Jar Entm't, Inc.*,

---

[6]      *See* Federal Court Management Statistics–National Judicial Caseload Profile (Sept. 30, 2019), http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison1231.2016.pdf.

No. 09-1056, 2009 WL 3713686, at *8-9 (N.D. Ohio Nov. 3, 2009); *Curwood Inc. v. Prodo–Pak Corp.*, No. 07-544, 2008 WL 644884, at *6-7 (E.D. Wis. Mar. 7, 2008); *Vision Tech. Design & Mfg., Inc. v. Gen.  Wire Spring Co.*, No. 07-412, 2007 WL 2069945, at *7-8 (E.D. Cal. July 17, 2007); *Pegasus Trans., Inc. v. Lynden Air Freight, Inc.*, 152 F.R.D. 577 (N.D. Ill. 1993).  These courts have found that it is "unreasonable," *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. 07-02864, 2007 WL 3232276, at *3 (N.D. Cal. Nov. 1, 2007), "pointless," *Pegasus*, 152 F.R.D. at 577, "an immense waste of judicial and party resources," *Feingersh Photography*, 978 F. Supp. 2d at 468, and "patently wasteful," *Jones*, 2011 WL 250997, at *6, to create duplicative litigation in different fora.  It is also important to "avoid expensive piecemeal litigation," *Pressdough of Bismarck, LLC v. A&W Rests, Inc.*, 587 F. Supp. 2d 1079, 1088 (D.N.D. 2008), out of concern for "a strong public policy of the forum," *Coastal Steel Corp. v. Tilgham Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983), *overruled on other grounds by Lauro Lines v. Chasser*, 490 U.S. 495 (1989), such as "public policies promoting judicial efficiency."  *Freedom Mortgage*, 2009 WL 763899, at *4-5.

Circuit courts have also emphasized the need to avoid parallel litigation.  *See U.S.O. v. Mizuho Holding Co.*, 547 F.3d 749, 750 (7th Cir. 2008) ("There is no reason for identical suits to be proceeding in different courts."); *Coady v. Ashcroft & Gerel*, 223 F.3d 1, 10-11 (1st Cir. 2000) (transferring all claims to a single district to avoid parallel litigation); *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 144–45 (3d Cir. 1999) ("Before effecting [] a severance, a judge should weigh the convenience to the parties requesting transfer against the potential inefficiency of litigating the same facts in two separate forums."); *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 296 (3d Cir. 1994) (cautioning against severance if doing so would require the same issues to be litigated in two places); *Sunbelt Corp. v. Noble, Denton & Assocs.*, 5 F.3d 28, 33–34 (3d Cir.

1993) ("[A court] should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places."); *D'Jamoos*, 556 F.3d 94, 111 ("[B]efore dividing the case, the District Court should weigh the factors favoring transfer against the potential inefficiency of requiring the similar and overlapping issues to be litigated in two separate forums."); *Farmland Indus., Inc. v. Frazier-Parrott Commodities*, 86 F.2d 848, 852 (8th Cir. 1986) (refusing to enforce a forum-selection clause covering some but not all claims in the action); *Rolls Royce*, 775 F.3d at 679 (holding *Atlantic Marine* inapplicable to situations involving multiple forum-selection clauses, issuing a writ of mandamus to the district court to reconsider severance and transfer, and noting the importance of conserving judicial resources).[7]  The Supreme Court has also clearly stated that § 1404 is designed to minimize precisely the sort of parallel litigation that might occur if the Court severed Plaintiff's claims here.  *See Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different [courts] leads to the wastefulness of time, energy and money that [Section] 1404 was designed to prevent.").

Thus, although *Atlantic Marine* mandates transfer to a preselected forum in most cases involving a single forum-selection clause, and judicial economy will rarely decide a transfer motion in such a case without more, where there are competing forum-selection clauses, as here,

---

[7]    Civil procedure rules are likewise designed to prevent parallel litigation.  *See* Fed. R. Civ. P. 18 (permitting joinder of related claims and remedies); Fed. R. Civ. P. 19 (requiring the joinder of persons needed for just adjudication of a controversy); Fed. R. Civ. P. 20 (permitting joinder); Fed. R. Civ. P. 22 (allowing interpleader for interested parties); 28 U.S.C. § 1291 (requiring a "final order" by the district court so as to avoid piecemeal or unnecessary litigation of appeals).  Indeed, severing this case and sending some claims to Indiana would be contrary to the purpose of F.R.C.P. 1, which requires a "just, speedy, and inexpensive determination of every action."  The supplemental jurisdiction statute, on the basis of which Defendants removed this action to federal court, also recognizes the importance of conserving judicial resources by providing a mechanism to bring factually related claims together in one action.

*Atlantic Marine*'s considerations must give way to the overwhelming public policy favoring judicial economy. *See, e.g.*, *Samuels*, 2014 WL 4441943, at *7 ("Here, we are faced with two mandatory forum selection clauses in two separate contracts . . . [which is] entirely different [from *Atlantic Marine*].").  Plaintiff's claims share the same set of facts—indeed, they are constituent parts of a single transaction—and he seeks the same remedy, *i.e.*, revocation, which hinges on the interpretation and enforceability of the same agreements and the same series of events. *See Jones*, 2011 WL 250997, at *5; *Samuels*, 2014 WL 4441943, at *11; *Freedom Mortgage*, 2009 WL 763889, at *6.  The claims may require much of the same evidence, such as testimony from the same sales agents as to representations made during the negotiation process or in the contracts, the same inspection and service records, perhaps even the same internal documents relating to the condition of the RV at the time of sale.  Because of the close factual and legal ties between Plaintiff's claims, the most efficient approach is to keep them together rather than create parallel litigation, which would "substantially increase the costs of resolving the dispute for both parties and would require the efforts of two courts instead of one." *Curwood*, 2008 WL 644884, at *6.  At bottom, "[w]hile judicial economy is not the sole consideration . . .  it retains a cardinal role" in the Court's analysis, especially where competing forum-selection clauses are at issue. *Rolls Royce*, 779 F.3d at 681.

The Court recognizes a countervailing public policy in favor of enforcing contractual provisions, such as the forum-selection clauses here. *See McMahon v. City of Newark*, 195 N.J. 526, 529-31, 545-46 (2008); *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 130 N.J. 324, 341-42 (N.J. 1992); *Adsit Co., Inc. v. Gustin*, 874 N.E.2d 1018, 1022 (Ind. Ct. App. 2007); *Cadapult Graphic Sys.*, 98 F. Supp. 2d at 566 (collecting state cases).  Even so, based on the facts of this case, the Court declines to give that public policy dispositive weight for several reasons.

First, notwithstanding *Atlantic Marine*, "[t]he analysis of which forum selection clause to enforce, or whether to enforce any of them at all, is dependent upon the facts of a particular case." *Freedom Mortgage*, 2009 WL 763899, at \*4-5.  The facts here demonstrate a clear need to conserve judicial resources, and enforcing both forum-selection clauses would conflict with that basic, but important, objective.   Second, "the public interest factor is not satisfied simply because enforcement of a contract provision is generally a good thing."  *HR Staffing Consultants, LLC v. Butts*, 627 Fed. App'x. 168, 175 (3d Cir. 2015).  Third, New Jersey state courts (in addition to federal courts) prefer to decide related controversies in a single lawsuit.  *See Joel v. Morrocco*, 147 N.J. 546 (1997); *Olds v. Donnelly*, 150 N.J. 424 (1997); *Cogdell v. Hospital Ctr.*, 116 N.J. 7 (1989). Fourth, the purpose of the § 1404 transfer analysis "is to avoid the waste of time, energy and money and, in addition, to safeguard litigants, witnesses, and the public against avoidable inconvenience and expense."  *Rappoport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481, 497 (D.N.J. 1998).  Severance and transfer would undermine that purpose.  Fifth, Plaintiff's suit "is truly broader than the forum selection clause and the structure of the complaint is not an attempt to avoid the forum selection clause."  *Curwood*, 2008 WL 644884, at \*7.

Most importantly, if the public policy favoring forum-selection clauses were singularly decisive at this stage, then the *Howmedica* framework would end before it began: with the very forum-selection clauses whose enforceability is at issue.  The Court therefore does not read *Howmedica* to accord dispositive weight to forum-selection clauses in the public interests inquiry. To do so would render its four-step inquiry meaningless.  Quite the opposite, *Atlantic Marine* and *Howmedica* preserve "the need—rooted in the valued public interest in judicial economy—to pursue the same claims in a single action in a single court can trump a forum-selection clause."

16

*Rolls Royce*, 775 F.3d at 679.  Otherwise, it would not just be the "rare" case where a public interest defeats a forum-selection clause, but the impossible one.

On balance, the public interest factors decidedly favor venue in New Jersey.  Accordingly, Step Two, on the whole, favors venue in New Jersey.  Three facts lead the Court to this conclusion: the center of gravity of the dispute is in New Jersey, *see Depuy Synthes Sales*, 2013 WL 5816328, at *8, there is a strong public policy against wasting judicial resources, and severing Plaintiff's claims is an "extraordinary remedy" that the Court must try to avoid.  *Curwood*, 2008 WL 644884, at *6.  Because the Step Two analysis favors retaining all of Plaintiff's claims in New Jersey, which "conflicts with the Step One presumption" that the claims against Thor Motor should proceed in Indiana, the Court moves to Step Three.

### C.    Step Three: Threshold Issues Related to Severance

At this step, the Court must "consider threshold issues such as the presence of indispensable parties" and defects in jurisdiction.  *Howmedica*, 867 F.3d at 408.  If only one outcome for resolving the transfer motion "satisfies the constraints identified at this step, then the court adopts that outcome and the transfer inquiry ends.  But if more than one outcome satisfies the threshold severance constraints, then the court continues to Step Four.  *Id.* at 404.

### i.    Indispensable Parties

"[S]everance is clearly disallowed, . . . when a party is indispensable under Federal Rule of Civil Procedure 19(b)."  *Howmedica*, 867 F.3d at 404-05; *see also Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572-73 (2004); *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 421-22 (3d Cir. 2010).  Where severance would violate Rule 19, the case must go forward in its entirety, with all parties present, in a forum where jurisdiction and venue are proper as to the indispensable party.  *Howmedica*, 867 F.3d at 405; *Publicker Indus., Inc. v. Roman Ceramics*

17

*Corp.*, 603 F.2d 1065, 1069 (3d Cir. 1979).  Thus, the Court must determine whether any defendant is an indispensable party, and if so, whether "jurisdiction and venue are proper as to [that] party in only [New Jersey or Indiana]."  *Howmedica*, 867 F.3d at 405.

Defendants argue that they are not indispensable parties because none of them must be present for the Court to grant Plaintiff complete relief.  *See* Def. Mot., at 9; *Fields v. Volkswagonwerk AG*, 626 F.2d 293, 301 (3d Cir. 1980) ("This would occur, for instance, when an absent person has a claimed or apparent interest in the same relief sought by the plaintiffs.").  Plaintiff does not point out what, if any, party would have an "interest in the same relief" he seeks, how all Defendants must be present in the same forum for a court to accord him redress, or otherwise why any defendant is necessary for a full adjudication of his claims.  *See Fields*, 626 F.2d at 301.  Plaintiff vaguely suggests that all Defendants must be present to prevent the possibility of "conflicting precedents."  *See* Opp. Br., at 9.  However, "the possibility of a subsequent adjudication that may result in a judgment that is inconsistent as a matter of logic [does not] trigger the application of Rule 19."  *Fields*, 626 F.2d at 301-02.  Accordingly, I find that no defendant is an indispensable party under Rule 19.

ii.    Personal Jurisdiction

Next, I determine whether the Court must sever Plaintiff's claims against Thor Motor to cure a jurisdictional defect, or retain Plaintiff's claims against Camping World and Bank of the West to preserve jurisdiction.  There is little question that New Jersey could exercise specific personal jurisdiction over Plaintiff's claims against Thor Motor.  Plaintiff's claims "arise[] out of or relate[] to [Thor Motor's] contacts with the forum."  *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1780 (2017).  Specifically, Thor Motor contracted with Camping World to sell its RVs in New Jersey, Plaintiff bought an RV

18

manufactured by Thor Motor, Thor Motor then executed and registered a warranty for it, and Plaintiff has sued for breach of that warranty.  Although "regularly occurring sales of a product in a state do not justify the exercise or jurisdiction over a claim unrelated to those sales," *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 931 n.6 (2011), Thor Motor's sales in New Jersey give rise to this litigation and are the very contacts which Plaintiff alleges harmed him.  *See Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 (requiring an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum state").  The Court may, therefore, exercise specific personal jurisdiction over Thor Motor.

Neither must the Court retain Plaintiff's claims against Camping World and Bank of the West to preserve personal jurisdiction.  Indiana may exercise jurisdiction over Camping World and Bank of the West because they have represented that they will consent to a forum there.  *See* Fed. R. Civ. P. 12(b)(2); *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, . . . be waived."); *Zelson v. Thomforde*, 412 F.2d 56, 59 (3d Cir. 1969) ("[P]ersonal jurisdiction may be conferred by consent of the parties.") (citing *Petrowski v. Hawkeye-Security Ins. Co.*, 350 U.S. 495, 496 (1956)).  Accordingly, the Court is not required to sever Plaintiff's claims against Thor Motor to cure a jurisdictional defect, nor retain Plaintiff's claims against Camping World and Bank of the West to prevent one.

iii.   Venue

Finally, notwithstanding the forum-selection clauses, the Court finds that either venue is proper for all Defendants.  For the purposes of establishing venue, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c).  Because Thor Motor is

subject to personal jurisdiction in New Jersey, it is subject to venue here.  Moreover, as the place where Thor Motor authorized Camping World to sell its RVs and registered, executed, and performed its limited warranty, "a substantial part of the events or omissions giving rise to the claim[s] occurred" in New Jersey.  28 U.S.C. § 1391(b)(2); *Bockman v. First Am. Mktg. Corp.*, 459 Fed App'x. 157, 161 (3d Cir. 2012); *Cottman*, 36 F.3d at 294; *Wilson v. JPMorgan Chase*, No. 18-13789, 2020 WL 3168539, at *3 (D.N.J. June 15, 2020).  Venue is also proper in Indiana for Plaintiff's claims against Camping World and Bank of the West.  Like personal jurisdiction, venue is proper if a party consents to it, even if it would otherwise be improper under the venue statutes.  *See Park Inn*, 105 F. Supp. 2d at 377; *Howard*, 2020 WL 1102494, at *5 (collecting cases).  Here, Camping World and Bank of the West have represented that they will consent to Indiana.  *See Actega Kelstar, Inc. v. Musselwhite*, No. 09-1255, 2009 WL 1794793, at *3 (D.N.J. June 22, 2009) ("Like personal jurisdiction, an objection to venue may be waived.") (quotation omitted); *see also Wall Street Aubrey Golf, LLC v. Aubrey*, 189 Fed App'x. 82, 87 (3d Cir. 2006) ("[P]arties can agree to venue among themselves.").

In sum, at Step Three, the Court may transfer all or some of Plaintiff's claims without creating a jurisdictional defect, but it also may retain the whole case.  Because any outcome satisfies the threshold severance constraints, "in deciding where the whole case should proceed," the Court continues to Step Four.

D.     *Step Four: Which Transfer Decision Most Promotes Efficiency Yet Minimizes Prejudice*

At Step Four, the Court "exercises its discretion . . .  in choosing the most appropriate course of action."  *Howmedica*, 867 F.3d at 405.  The Court's discretion is measured "against two key sets of interests."  *Id.*  On the one hand, the Court "considers efficiency interests in avoiding duplicative litigation, . . . as well as any other public interests that may weigh against enforcing a

forum-selection clause." *See Atlantic Marine*, 571 U.S. at 67; *Rolls Royce*, 775 F.3d at 681; *Jumara*, 55 F.3d at 879-80.  On the other hand, the Court "is guided by . . . *Atlantic Marine*'s directive that 'courts should not . . . disrupt the parties' settled expectations' embodied in forum-selection clauses except when other factors 'overwhelmingly' weigh against enforcing the clauses." *Howmedica*, 867 F.3d at 409 (quoting *Atlantic Marine*, 571 U.S. at 66-67).  In exercising its discretion to retain this case in its entirety, transfer it in its entirety, or sever Plaintiff's claims against Thor Motor, the Court must navigate "the tension between these centrifugal considerations." *See Rolls Royce*, 775 F.3d at 679.

Step Four largely encompasses the same considerations as Step Two, and the Court sees no reason why the analysis at this step should be any different. *See Howmedica*, 867 F.3d at 409. To recap the public interest inquiry: venue in New Jersey most promotes efficiency and conserves judicial resources.  Plaintiff accuses Thor Motor and Camping World of similar wrongdoing— failure to "provide a vehicle free of defects after numerous attempts to repair," and related breaches of contract—based on the same evidence, transaction, and series of events, which occurred in New Jersey.  Neither *Atlantic Marine* nor *Howmedica* disturbs the longstanding principle that "the same issues" should be litigated in the same forum to avoid wasteful parallel litigation. *Sunbelt Corp.*, 5 F.3d at 33-34.  Likewise, because all parties contracted for a forum-selection clause, there is no cause to consider which outcome would minimize prejudice to them. *See Howmedica*, 867 F.3d at 403-04 (noting that the Step Four prejudice inquiry focuses on non-contracting parties only). Lastly, Thor Motor argues that, because courts have "consistently enforced" its forum-selection clauses, "at best" there is support here for severance and transfer. *See* Reply Br., at 1-2.  However, Thor Motor relies on cases wherein it was the only defendant and there was only one forum-selection clause to be enforced. Indeed, confronted with similar facts as in those cases, the Court

would likely transfer the claims against Thor Motor.  But, unlike those cases, this matter involves two forum-selection clauses identifying two different venues and all operative facts occurred in New Jersey.  Hence, Thor Motor's argument regarding the enforceability of its own forum-selection clause is unpersuasive.  Having waded through all four steps of *Howmedica*, the Court finds the overwhelming interest in efficiency, together with the fact that New Jersey is the center of gravity of the dispute, to favor retaining all claims in New Jersey.  *See Feingersh Photography*, 978 F. Supp. 2d at 468 ("[T]he public interests strongly favor litigation of all of the claims in a single forum.").

## IV.   CONCLUSION

After applying the *Howmedica* framework to these facts, and in the interest of conserving judicial resources, the Court finds that New Jersey is the most appropriate forum for all of Plaintiff's claims.  Accordingly, Defendants' motion to transfer is **DENIED**.


**DATED**:  July 22, 2020                                    /s/ Freda L.  Wolfson
                                                             Freda L.  Wolfson
                                                             U.S. Chief District Judge